UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL DOUGALL, et al., | ) | CASE NO. 5:17-cv-1664 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| COPLEY FAIRLAWN CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al., | ) ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is plaintiffs' motion, filed under seal, to supplement or add evidence to the administrative record. (Doc. No. 36-1 [Seal No. 4135] ["Mot."].)[1] Defendants filed a memorandum in opposition. (Doc. No. 37, as supplemented by Doc. No. 39 [collectively, "Opp'n"].) For the reasons set forth herein, plaintiffs' motion to supplement the administrative record is denied, with a caveat as expressed in the conclusion to this order.

## I. BACKGROUND

On August 8, 2017, plaintiffs Paul and Jennifer Dougall ("the Dougalls" or "plaintiffs") filed their complaint in their own capacity and as natural guardians of A.D., a minor, who is alleged to be a child with a disability. (Doc. No. 1 [Compl."].) They named as defendants the Copley-

---

[1] The motion under consideration is actually a sealed attachment to plaintiffs' motion for leave to file supplemental exhibits under seal. (Doc. No. 36.) For record purposes, Doc. No. 36 is granted to the extent it seeks leave to file Doc. No. 36-1, with its accompanying exhibits, under seal. The instant memorandum opinion and order will address whether those sealed documents will be considered part of the record. Whether or not they are ultimately part of the record, the documents will remain available on the docket for purposes of any appeal from this decision.

Fairlawn City School District Board of Education ("the District") and several officials, in both their individual and official capacities, as well as the Ohio Department of Education ("ODE").[2]

The case arises out of a dispute between the Dougalls and the District about whether the District provided appropriate educational services to A.D. under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400–1415. Although the complaint is set forth in eight (8) counts, at the parties' joint suggestion, Counts V, VI, VII, and VIII have been stayed pending resolution of Counts I, II, and III; Count IV was voluntarily dismissed. (*See* Minute Order, 3/9/18.)

The IDEA provides various substantive rights to children with special needs. The rights are protected through several procedural mechanisms. "The lynchpin of the IDEA is a document known as the 'individualized educational program' ('IEP')." *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 426 (6th Cir. 2016) (citation omitted). Plaintiffs allege that, despite their repeated requests and a clear need for one, A.D. has not been given an IEP. (Compl. ¶ 20.)

The complaint outlines in considerable detail all the difficulties A.D. experienced in school. It alleges that "her primary school teachers expressed concern about her acting differently than other students, and A.D. struggled socially." (*Id.* ¶ 24.) The complaint alleges that she has always "struggled … [with] reading non-verbal ques [sic] and understanding verbal communications when someone is joking, exaggerating, or not speaking literally." (*Id.* ¶ 38.)

"As early as fifth grade, Plaintiffs notified the [District] that A.D. suffered from anxiety while at school[,]" primarily related to "stomach issues" and "bathroom access[,]" but exacerbated by her "social support needs." (*Id.* ¶¶ 29, 32, 42.)

---

[2] After it filed the administrative record, effective March 13, 2018, the ODE was dismissed without prejudice, by agreement of the parties. (*See* Minute Order, 3/9/2018.)

2

Although A.D. "was actively involved in band, cross country, and color guard," she "experienced many problems in those extra-curricular activities due to the lack of appropriate accommodations, related services and specially designed instruction." (*Id.* ¶ 48.)

Early in her eighth grade year (2014–15), A.D. "was dealing with depression, anxiety, suicidal ideations, and panic attacks, as well as being bullied severely, including threats to be murdered," (*id.* ¶ 51), all of which was communicated by plaintiffs to the District. The District allegedly "never completed a bullying investigation, caused the bullying to cease, or followed its own policies regarding bullying." (*Id.* ¶ 57.)

Starting in December 2014, A.D. "had become more depressed, began seeing a counselor and taking medications for her mental health, … and even expressed suicidal ideations." (*Id.* ¶ 64.) These facts were communicated to the District through A.D.'s guidance counselor and her teachers. (*Id.*)

In February 2015, A.D.'s doctor noted "a possibility that A.D. has autism[,]" that she "met the criteria for anxiety disorder, panic disorder, generalized anxiety disorder, separation anxiety disorder, social anxiety disorder, and significant school avoidance[,] and that overall A.D. present[ed] as a severely depressed and anxious young woman." (*Id.* ¶ 71; *see also* ¶ 77.)

Eventually, A.D. was diagnosed with "autism spectrum disorder, without accompanying intellectual impairment, without accompanying language impairment, level 1, requiring support; generalized anxiety disorder; [and] adjustment disorder with depressed mood." (*Id.* ¶ 87.) Despite notice and several requests from the Dougalls for assistance, the District "failed to even provide the family with any sort of information regarding an IEP or to educate them or offer information about their disability and procedural protections under state and federal law." (*Id.* ¶ 94.)

Finally, in October 2015, when A.D. was in ninth grade, and after repeated notifications by the plaintiffs to the school that A.D. was struggling significantly (*see id.* ¶¶ 97–108), A.D. "dropped a note in school that was labeled 'shooting plan.'" (*Id.* ¶ 109.) The District initiated an investigation, culminating in A.D.'s arrest by the police. (*Id.* ¶¶ 112–113.) A.D. was initially suspended from school, and then was released by the police and admitted to "a partial psychiatric hospitalization program for mental health[.]" (*Id.*) Despite additional information supplied to the District (*see id.* ¶¶ 119–121), the District scheduled an expulsion hearing for October 28, 2015. (*Id.* ¶ 122.) Although A.D.'s disabilities were discussed during this hearing, "the [District] still failed to consider A.D. a student with a disability." (*Id.* ¶ 126.)

A.D. was expelled for 80 days and had to complete certain specified requirements before being allowed to return (*Id.* ¶¶ 127–128); the Dougalls appealed this suspension. A.D. did not return to Copley-Fairlawn Schools; rather, she was enrolled at a private school "because the [District] failed to provide her with an appropriate education and accommodations." (*Id.* ¶ 132.)

The Dougalls filed an expedited Due Process Complaint on November 16, 2015. (*Id.* ¶ 134.) The next day, the Dougalls' legal counsel sent letters to the District requesting a multi-factored evaluation ("MFE") and asking that all information about and recordings of A.D. be preserved. (*Id.* ¶ 135.) This request was not honored. (*Id.* ¶ 136.)

In the meantime, the expulsion appeal hearing occurred; therein, the District allegedly acknowledged that A.D. was a student with disabilities; yet the expulsion was upheld. (*Id.* ¶¶ 140, 144.) On December 7, 2015, plaintiffs' counsel advised the District in writing of the Dougalls' desire that A.D. be permitted to return to Copley-Fairlawn Schools, and asked for an offer of a FAPE for her. (*Id.* ¶ 151.) The Dougalls allege that various procedural violations occurred following this letter, resulting in a breakdown in trust. (*Id.* ¶¶ 152–57, 161.) They revoked their

4

previous releases, but did not revoke their consent for A.D. to be evaluated by the District. (*Id.* at ¶¶ 162–63.) The District, however, interpreted the Dougalls' actions as a revocation of their consent for any evaluation. (*Id.* ¶ 167.) The Dougalls, nonetheless, persisted (through counsel) in their requests that A.D. be evaluated by the District. (*Id.* ¶ 172.)

A due process hearing was conducted over several days between February and September 2016. (*Id.* ¶ 175.) On November 16, 2016, a decision was issued in the District's favor, and this was affirmed on appeal. (*Id.* ¶¶ 181, 183–84.)

## II. DISCUSSION

Under the IDEA, a parent files a due process complaint and an Impartial Hearing Officer ("IHO") is assigned to preside over an evidentiary hearing, followed by a written decision. The parents may appeal that decision to a State Level Review Officer ("SLRO"), who reviews the record before the IHO, along with the parties' submissions, and issues a decision. "Any party aggrieved by the findings and decision [of the administrative proceedings] … shall have the right to bring a civil action with respect to the complaint … in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A).

This Court's review in an IDEA case is typically confined to the record of the administrative proceedings, 20 U.S.C. § 1415(i)(2)(C)(*i*), which was filed here by the Ohio Department of Education. (*See* Doc. No. 34.) But the statute also provides that the reviewing court "shall hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(C)(*ii*).

Based on this latter provision, plaintiffs have moved to include over 800 additional pages of information, all but about 90 of those pages under seal. The District opposes this supplementation of the record arguing that "this court is [already] presented with a hefty procedural

record, containing a lifetimes' worth on [sic] information about a single decision by a board of education that has resulted in no measurable harm to the Plaintiffs or their child, according to the administrative trier of fact and the reviewing officer." (Opp'n at 4965.)

The Sixth Circuit takes "an expansive view of the scope of additional evidence that may supplement the administrative record and has declined to adopt the narrow position of other circuits that additional evidence is admissible only in limited circumstances, such as to supplement or fill in the gaps in the evidence previously introduced." *Adam Wayne D. ex rel David D. v. Beechwood Indep. Sch. Dist.*, Nos. 10-5388 & 10-5422, 2012 WL 1861041, at *6 (6th Cir. May 22, 2012) (internal quotation marks and citations omitted).

"'The determination of what is "additional" evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character [of] the hearing from one of review to a trial *de novo*.'" *Metro. Gov't of Nashville & Davidson Cty., TN v. Cook*, 915 F.3d 232, 234–35 (6th Cir. 1990) (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790–91 (1st Cir. 1984)).[3] "District courts should consider the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, … and the conservation of judicial resources." *Ruhl v. State of Ohio Dep't of Health*, No. 16-CV-773, 2016 WL 5869828, at *5 (N.D. Ohio Oct. 7, 2016) (internal quotation marks and citation omitted).

Plaintiffs seek to submit three (3) sets of documents: (1) Supplemental Records Group One (Doc. No. 36-2 ["SuppRec 1"]), consisting of "items that are personal in nature to the Dougall

---

[3] The Sixth Circuit has determined that, although the due process hearing is given *de novo* review, "'the district court should give due weight to the state administrative proceedings in reaching its decision.'" *Id*. at 235, n.1 (quoting *Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989)).

family and A.D." (Mot. at 4139); (2) Supplemental Records Group Two (Doc. No. 36-4 ["SuppRec 2"]), consisting of "public records obtained through public records request or that are available to the public" (*id.* at 4145); and (3) Supplemental Records Group Three (Doc. No. 36-3 ["SuppRec 3"]), consisting of "transcripts from the administrative hearing regarding A.D. and Copley-Fairlawn which was taking place at the same time as the instant administrative complaint was filed and related to a limited issue regarding disciplinary protections under the IDEA and is currently being litigated in state court" (*id*. at 4146).

In its opposition brief, the District addresses each of the three sets of documents, arguing that various portions have no relevance to this administrative appeal, are already part of the record (or, if not, were not timely offered during the administrative proceedings), or are currently under review as part of a different, as yet uncompleted, administrative review. The District asserts that there is no justification for adding this voluminous amount of documents to the record.

The administrative record before this Court is already 3,877 pages in length, and plaintiffs seek to add another 800+ pages. As noted above, the only portions of the complaint now at issue are those dealing with this Court's review of the administrative proceedings, not any of the other substantive claims. Although, in *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004), the Sixth Circuit warned that "the court should take care to limit additional evidence to what is necessary for consideration of whether the original IEP was reasonably calculated to afford some educational benefit[,]" *id.* at 850 (citation omitted), here, part of what plaintiffs are challenging is the District's complete failure to provide the disability services, in particular, the IEP, that plaintiffs claim A.D. needs. Despite this somewhat broader scope of plaintiffs' claims, for the reasons below, the Court, in its discretion, rejects plaintiffs' belated attempt to add to the record of this case *at this juncture*, where the review is quite limited.

7

Looking first at SuppRec 1 and SuppRec 2, as properly pointed out by defendants, many of these documents were available but were never presented by plaintiffs to the IHO. (*See, e.g.,* Opp'n at 4967–72 (citing SuppRec 1 at 4173–80, 4181–93, 4194–95, 4230–41, 4242–43, 4246–48, 4253–58, 4314, 4315–16, 4327–31, 4332, 4333–34, 4335–38, 4359–64); Opp'n at 4972 (citing SuppRec 2 at 4914–25).) Defendants argue that these, and similar documents, should not be belatedly added to the record.

Defendants also argue that many of these documents were created well after the administrative proceedings and, therefore, should not be considered when determining whether those proceedings were in error. (*See, e.g.,* Opp'n at 4967–71 (citing SuppRec 1 at 4148–72, 4244, 4245, 4249–52, 4259–63, 4271, 4299–4313, 4317, 4359–64).)

Defendants additionally argue that many of these documents are simply not relevant to the administrative review presently before the Court. (*See, e.g.,,* Opp'n at 4967–72 (citing SuppRec 1 at 4197–98, 4230–41, 4242–43, 4264–70, 4318–24, 4325–26, 4327–31, 4339–58); Opp'n at 4972 (citing SuppRec 2 at 4869–4913, 4926–54).)

Despite the Sixth Circuit's "expansive view" of the permissible "scope of admissible evidence," *Adam Wayne D.*, *supra*, admission at this juncture of this large volume of material that either was not utilized by plaintiffs during the administrative proceedings or was unavailable because it post-dated those proceedings would "change the character [of] the hearing from one of review to a trial *de novo*." *Cook*, *supra*. As to the documents that were available to them at the time of the administrative proceedings, plaintiffs have not explained why they did not seek to admit them so that they could be considered by the Impartial Hearing Officer and the State Level Review Officer. Nor have they explained why documents that were created after the administrative

8

proceedings ended and were, therefore, unavailable during the administrative proceedings could possibly be relevant to this Court's review of those proceedings. The Court rejects this attempt by plaintiffs to supplement the record and, with the caveat expressed in the conclusion to this order, denies supplementation of the record with the documents in SuppRec 1 and SuppRec 2.

Finally, the transcripts identified as "SuppRec 3" will also not be accepted as "additional evidence" within the meaning of the IDEA. These additional proceedings dealt with the question of whether A.D. was expelled without first being afforded a Manifestation Determination Review ("MDR"), that is, a determination of whether her disability caused or contributed to her behavior. It also appears to be undisputed that the appeal from these administrative proceedings is ongoing in state court. The Summit County Court of Common Pleas (in a case commenced on October 3, 2016) affirmed the administrative decision on August 15, 2017, one week after the instant case was filed, and that affirmance is currently under review in the Ninth District Court of Appeals of Ohio, with oral argument set for April 11, 2019.[4] The Court notes that one of the claims in the instant case asserts a failure to conduct the MDR. Although this claim is currently stayed, the Court questions whether it even has jurisdiction over that count or whether it may be barred by res judicata. That, however, is a determination for another day. What the Court determines now is that the transcripts identified as SuppRec 3 will not be accepted as "additional evidence."

---

[4] Federal courts may take judicial notice of related "'proceedings in other courts of record.'" *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005) (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.3d 736, 738 (6th Cir. 1980); Fed. R. Evid. 201).

## III. CONCLUSION

For the reasons set forth herein, plaintiffs' motion to supplement the administrative record (Doc. No. 36/36-1) is denied with the following caveat.[5] Following this Court's review of the administrative proceedings encompassed by Counts I, II, and III of the complaint, should any party desire to supplement the record with any additional documents relevant to the merits of the claims in Counts V–VIII, the Court will entertain (although it is not inviting) an appropriate, timely motion setting forth good cause for limited supplementation.

Pursuant to the Court's Order dated August 15, 2018, plaintiffs' opening brief with respect to Counts I, II, and III is now due by April 2, 2019; defendants' response brief will be due May 28, 2019; plaintiffs' reply will be due June 25, 2019.

**IT IS SO ORDERED**.

Dated: March 18, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[5] All of the supplemental documents presented by plaintiffs, although not a part of the official record of this case by virtue of this ruling, shall remain under seal because they contain interspersed references to personal identifiers governed by the E-Government Act of 2002.