**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| DOUGALL, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> COPLEY-FAIRLAWN CITY SCHOOL DISTRICT BOARD OF EDUCATION, *et al.*, <br><br> Defendants. | Civil Action No. 5:17-cv-01664 <br><br> Judge Pamela A. Barker <br><br> Magistrate Judge Kathleen M. Burke <br><br> **Plaintiffs' Motion to Enforce Settlement Agreement, or, in the Alternative, Motion to Extend Deadline for Response in Opposition to Defendants' Motion for Summary Judgment** |

**I. Introduction**

Plaintiffs Paul Dougall, Jennifer Dougall, and A.D. hereby move for enforcement of the parties' agreement to settle this matter, or, in the alternative, an order granting extension of the deadline for Plaintiffs' Motion in Opposition to Defendants' Motion for Summary Judgment until the close of discovery, being May 21, 2021. As set forth below, the parties reached an enforceable settlement agreement on February 16, in writing, on all material terms. The State Defendants, Paolo Demaria, Superintendent of Public Instruction for the Ohio Department of Education (ODE) and the ODE, have since failed to comply with that agreement, and contrary to clear and binding Ohio law, have refused to acknowledge its enforceability.

Plaintiffs are a family, situated as many other families in Ohio, attempting to assert their rights for their child to grow and prosper in Ohio's school system. The settlement agreement reached by the parties reflects the importance of this concern to Plaintiffs, as it required the State Defendants to add language to the next iteration of the *IHO/SLRO Manual* ("*IHO Manual*") in the areas of cost reduction, rules of evidence, training on relevant law, conflicts of interest, hearing times and locations. The aforesaid changes to the *IHO Manual* were in exchange for the Plaintiffs'

dismissal of the claims against the State Defendants within seven (7) days of the effective date of the agreement. The revisions to the *IHO Manual* are anticipated to be in the next iteration of the *IHO Manual* by the end of the calendar year 2021. As set forth below, Ohio law entitles Plaintiffs to enforcement of the settlement.

## II. Facts

On June 2, 2020, Plaintiffs Paul Dougall, Jennifer Dougall and A.D. filed their amended complaint, asserting claims against the State Defendants, who are a state agency and its Superintendent of Public Instruction, designated under Ohio law to, among other things, oversee implementation of the IDEA within the State of Ohio; and compliance with the requirements of Section 504 and the ADA. Once the State Defendants became a party to the case, there were multiple case management conferences and scheduling orders for mediation to take place between the parties. The mediation was rescheduled twice, once for September 19, 2020, then for November 20, 2020, and lastly for January 15, 2021. First, due to the State Defendants conflict, secondly for the Plaintiffs and State Defendants to exchange written proposals and counterproposals as to the Plaintiffs non-monetary demands between the parties.

Plaintiffs sent a written demand to ODE on November 6, 2020 and received the State Defendants Response on November 12, 2020 wherein the State Defendants stated they would be filing a dispositive motion shortly. As stated above, the mediation was first moved to September, then moved to January so the Plaintiffs and State Defendants could work collaboratively on possible rule or training modifications as part of the non-monetary demands. The Plaintiffs and State Defendants conferred and exchanged the written proposals and counterproposals as directed by the court throughout the month of December.

On January 15, 2021, all parties met via Zoom video conference before the Honorable Magistrate Judge Burke for the mediation. Although the mediation was unsuccessful between the

School Defendants, Plaintiffs and State Defendants were discussing a possible resolution as to the claims asserted against the State (ODE) Defendants. Any agreed settlement was to be filed with Honorable Magistrate Judge Burke's Court by 5:00 p.m. January 15, 2021. See Doc #: 87.

Plaintiffs and State Defendants, due to miscommunications, did not reach resolution through a settlement. The State Defendants sent a copy of the proposed settlement agreement they were willing to accept at 2:17 p.m. on Friday January 15, 2021 and asked for Plaintiffs' counsels' thoughts, which were provided at 4:39 pm on January 15, 2021. The State then notified this Honorable Court the parties had not yet reached an agreement and would notify the Court as to any updates early the week of January 16, 2021.

On January 19, 2021, the State Defendants notified the Court they were no longer interested in negotiating, ands sent a similar email to the Plaintiffs' counsel stating "ODE is no longer interested in negotiating. Our last offer (the draft I sent at 2:17 on Friday) at is still on the table, but that's as far as ODE is willing to go." **Exhibit 1 January 19, 2021 2:47 p.m. email**.  The email set no deadline on the offer for acceptance of the draft sent on Friday, January 15, 2021 at 2:17 p.m. *Id.*. In fact, Plaintiffs' counsel replied "Thank you for the email, I will discuss with my clients and proceed as needed. Hopefully we'll be resolved. Thank you for the clarification on the discovery time." **Exhibit 2 January 19, 2021 3:10 p.m. email Plaintiffs to State.** No further communications were had about the settlement until February 16, 2021.

On February 16, 2021 Plaintiffs counsel called State Defendants counsel to advise the Plaintiffs were accepting the States original offer of settlement sent on January 15, 2021, at 2:17 p.m. and awaiting signatures. Plaintiffs' Counsel then sent an email to the State Defendants' Counsel on February 16, 2021 at 3:36 p.m. in a reply to the States email sent January 15, 2021, at 2:17 p.m. confirming the acceptance of the offer. **Exhibit 3 February 16, 2021 at 3:36 p.m**. **Plaintiffs to State.** On February 17, 2021, at 9:36 a.m. the State Defendants purported to rescind the offer in an

email. **Exhibit 4 February 17, 2021 9:36 email State to Plaintiffs**. Plaintiffs' counsel reached out to State Counsel reminding them the offer had not been rescinded prior to acceptance at 11:57 am on February 17, 202, **Exhibit 5 February 17, 2021 11:57 a.m. email Plaintiffs to State,** and received a reply at 12:31 p.m. stating the ODE's decision was final. **Exhibit 6 February 17, 2021 12:31 p.m. email**

These material and enforceable terms of the settlement were listed in Defendants' counsel's email attachment as follows:

1. <u>Plaintiffs' Consideration</u>. Plaintiffs, in consideration for ODE's commitments in paragraph 2 below, hereby agree that they will dismiss with prejudice all claims against DeMaria and ODE that were or could have been asserted in The Case within seven days after the effective date this agreement.  Plaintiffs, and each of them, forever release DeMaria and ODE, and all of their officers, agents, employees, and representatives from any and all liability they may have to any or all of the Plaintiffs, including liability for damages, compensatory education, costs, attorney fees, and prospective relief.

2. <u>ODE's Consideration</u>. ODE, in consideration for Plaintiffs' undertakings made in paragraph 1 above, hereby agrees that:

   A. *Cost reduction*. ODE will add the following, or substantially similar, language to the next iteration of the *IHO/SLRO Manual* ("*IHO Manual*"):

      "Documents exchanged at the disclosure conference should normally be exchanged in electronic form, in PDF format. A party may be required to provide hard copies of documents upon a showing of good cause, made by the requesting party and accepted in advance of the disclosure conference by the IHO. Regardless of the form in which documents are exchanged before the hearing, IHOs have discretion to require hard copies for use as exhibits at the hearing."

   B. *Rules of evidence*. ODE will add the following, or substantially similar, language to the next iteration of the *IHO Manual*:
      "To the extent not controlled by the Individuals with Disabilities Education Act ("IDEA"), the federal regulations implementing the IDEA, R.C. Chapter 3323 , or

Ohio Admin. Code Chapter 3301-51 evidentiary disputes arising in connection with the litigation of due process complaints should be resolved in accordance with the principles controlling proceedings governed by R.C. Chapter 119, as summarized in the latest version of the Ohio Attorney General's *Administrative Law Handbook*."

C. *Training on relevant law*. ODE's annual training for hearing officers will include training on *Deal v. Hamilton Cty. Bd. of Edn.*, 392 F.3d 840 (6th Cir. 2004) and other relevant case law.

D. *Conflicts of interest*. ODE will add the following, or substantially similar, language to the next iteration of the *IHO Manual*:

"IHOs and SLROs are reminded that they are bound by the *Ohio Rules of Professional Conduct*, including the provisions addressing conflicts in interest, when considering whether they can accept assignments to preside over particular due process cases and while presiding over those cases."

ODE will periodically include presentations on the conflict of interest provisions of the *Ohio Rules of Professional Conduct* in its trainings for IHOs and SLROs.

E. *Hearing times/locations; accommodating pro se parties*. ODE will add the following, or substantially similar, language to the next iteration of the *IHO Manual*:

"IHOs should, to the fullest extent reasonably possible, take parents' concerns into account when setting the time and location of hearings. Hearings are not required to be held during normal business hours.  Hearings may held via virtual platforms."

ODE will periodically include presentations on proceedings involving pro se parties in its trainings for IHOs and SLROs.

F. *Revisions to the IHO Manual*. ODE anticipates that it will issue the next iteration of the *IHO Manual* by the end of calendar year 2021. ODE will consider any other revisions to the *IHO Manual* that Plaintiffs suggest in preparing that iteration.

G. *State Advisory Panel for Exceptional Children*. ODE does not believe that it is required to obtain approval of the changes it has agreed to in this agreement from from the State Advisory Panel for Exceptional Children *("SAPEC")*, but cannot guarantee that. ODE's commitments in this agreement are therefore subject to possible override by SAPEC.

**Ex. 7, January 15, 2021, at 2:17 p.m. Email State to Plaintiffs with Settlement**.

To date, Defendants have maintained their position that the parties do not have an enforceable settlement agreement, have refused to comply with the material and enforceable terms

to which they agreed on January 15, 2021 and insisted on proceeding to litigate at the taxpayers' expense.

## II. Law and Argument

"[W]hether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Hinton v. Trinity Hwy. Prods., LLC*, N.D.Ohio No. 4:12-cv-1063, 2012 U.S. Dist. LEXIS 150061, at *6-7 (Oct. 18, 2012), citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Thus, here, "Ohio law applies to the determination of whether the parties' settlement agreement is enforceable." *Future Lawn, Inc. v. Magee*, N.D.Ohio No. 3:12-cv-2670, 2019 U.S. Dist. LEXIS 91750, at *3 (May 31, 2019), citing *Bamerilease*.

Under Ohio law, it is well-established that "[p]ublic policy strongly favors the enforcement of settlement agreements." *Rayco Mfg. v. Murphy*, 2018-Ohio-4782, 117 N.E.3d 153, ¶ 56 (8th Dist.), citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 38, 285 N.E.2d 324 (1972) "The resolution of controversies ... by means of compromise and settlement ... results in a saving of time for the parties, the lawyers, and the courts, and it is thus advantageous to judicial administration, and, in turn, to government as a whole." *Spercel* at 38. Accordingly, an agreement to settle litigation "cannot be repudiated by either party and will be summarily enforced by the court." *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 38–39 (1972).

Because the parties to this litigation reached an enforceable agreement to resolve this case on February 16, 202, the Plaintiffs hereby seek enforcement of that February 16, 2021 settlement offered by the State Defendants on January 19, 2021, as required by the clear and controlling Ohio law set forth below.

**A.      On February 16, 2021, the parties entered into an enforceable settlement agreement offered by the State Defendants on January 19, 2021.**

"A settlement agreement is[, simply,] a contract designed to terminate a claim by preventing or ending litigation." *Rayco*, ¶ 30, citing *Continental W. Condominium Unit Owners Ass'n v. Howard E. Ferguson, Inc.*, 74 Ohio St. 3d 501, 502, 1996-Ohio-158, 660 N.E.2d 431 (1996). "Like any other contract, it requires an offer, acceptance, consideration and mutual assent between two or more parties with the legal capacity to act." *Rayco*, ¶ 30, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. *See also Hillbrook Bldg. Co. v. Corporate Wings*, 8th Dist. Cuyahoga No. 68619, 1996 Ohio App. LEXIS 3854, at *10 (Sep. 5, 1996) ("An oral settlement agreement requires no more formality and no greater particularity than appears in the law for the formation of a binding contract.").

Accordingly, an enforceable settlement agreement exists as long as the "essential terms of the agreement [are] … 'reasonably certain and clear' and mutually understood by the parties." *Rayco* ¶ 30, quoting *Kostelnik* ¶ 16, *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 1997-Ohio-380, 683 N.E.2d 337 (1997). "Particularly where, as here, there is written evidence of a settlement agreement ... a preponderance of the evidence standard applies in determining whether a settlement agreement exists." *Rayco*, ¶ 42, citing *Hillbrook*, *9-13. And, importantly, "[i]t is only where the parties intend that there will be no contract until the agreement is fully reduced to writing and executed that no settlement exists unless the final, written settlement agreement is signed by all of the parties." *Rayco*, 2018-Ohio-4782, ¶ 31, citing *PNC Mtge. v. Guenther*, 2d Dist. Montgomery No. 25385, 2013-Ohio-3044, ¶ 15. In other words, where the "parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *RE/MAX Internatl., Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001).

Moreover, "[o]nce a settlement offer has been accepted, the settlement agreement is mutually binding; the settlement agreement cannot be set aside simply because one of the parties later changes its mind." *Rayco*, ¶ 31, citing *Turoczy Bondsing Co. v. Mitchell*, 8th Dist. Cuyahoga No.

10694, 2018-Ohio-3173, ¶ 18 ("Once there is … a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind."). *See also Mack v. Polson Rubber Co.*, 14 Ohio St.3d 34, 36-37, 14 Ohio B. 335, 470 N.E.2d 902 (1984), quoting *Spercel*, 31 Ohio St.2d at 37 ("'To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity…'"); *Walland v. Rinehart*, 8th Dist. Cuyahoga Nos. 51935, 52672, 1987 Ohio App. LEXIS 6805, at *6 (Mar. 26, 1987), citing *Mack v. Polson Rubber Co.*, 14 Ohio St.3d 34 (1984) ("[M]ere dissatisfaction with a settlement will not permit repudiation of the agreement."). While "all agreements have some degree of indefiniteness and some degree of uncertainty," it is well-settled that "people must be held to the promises they make." *Kostelnik*, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 17. *See also Clark v. Corwin*, 9th Dist. Summit No. 28455, 2018-Ohio-1169, ¶ 13 ("[W]hen the parties agree to a settlement offer, [the] agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement.").

And Ohio law is similarly clear that, "[i]f a client authorizes its attorney to negotiate a settlement and the attorney negotiates a settlement within the scope of that authority, the client is bound by it." *Rayco*, 2018-Ohio-4782, ¶ 31 citing *Bromley v. Seme*, 2013-Ohio-4751, 3 N.E.3d 1254, ¶ 25 (11th Dist.), *Saylor v. Wilde*, 11th Dist. Portage No. 2006-P-0114, 2007-Ohio-4631, ¶12. Further, "[a] party cannot avoid a settlement that was negotiated through counsel by claiming that his attorney lacked actual authority to enter into the settlement." *Rayco* ¶ 31, citing *Fugo v. White Oak Condominium Assn.*, 8th Dist. Cuyahoga No. 69469, 1996 Ohio App. LEXIS 2725, 8-12 (June 27, 1996), *Klever v. Stow*, 13 Ohio App.3d 1, 4-5, 13 Ohio B. 1, 468 N.E.2d 58 (9th Dist. 1983), *Argo Plastic Prods. Co. v. Cleveland*, 15 Ohio St.3d 389, 392-393, 15 Ohio B. 505, 474 N.E.2d 328 (1984).

Here, there can be no dispute that the parties reached an enforceable settlement agreement as of 3:36 p.m. February 16, 2021, when Plaintiffs' counsel expressed his clients' acceptance of the

"material" terms set forth by Defendants, as an "enforceable settlement" as of January 19, 2021 at 2:47 p.m. **Ex. 1** (State email to Plaintiffs). There is no question that counsel's correspondence set forth the "essential terms of the agreement" that are … 'reasonably certain and clear' and mutually understood by the parties." **Ex. 7** (Settlement Agreement); *Rayco* ¶ 30; *Kostelnik* ¶ 16. And counsel's correspondence leaves no room for an argument that, "the parties intend[ed] that there will be no contract until the agreement is fully reduced to writing and executed." **Ex. 1** (State email to Plaintiffs); *Rayco*, ¶ 31; *Guenther*, 2013-Ohio-3044, ¶ 15. *See also Rayco*, 2018-Ohio-4782, ¶ 33 (affirming the existence of a settlement agreement where counsel emailed an "unambiguous offer" to settle and opposing counsel verbally accepted in leaving "a voicemail message … later that day.").

**B.      Plaintiffs are entitled to an award of attorneys' fees as compensatory damages for Defendants' conduct in breaching the parties' settlement agreement.**

Because the Plaintiffs have failed to comply with the parties' settlement agreement, the Court should also require Defendants to pay Plaintiffs' fees incurred in seeking the Court's enforcement of the settlement.

"[A]ttorney fees can be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when the fees are incurred as a direct result of a breach of the settlement agreement. *Rayco Mfg. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, 142 N.E.3d 1267, ¶ 11 (8th Dist.). *See also Tejada-Hercules v. State Auto. Ins. Co.*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, ¶ 22 ("When a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim … The trial court's judgment here, as well as the holding in *Shanker*, encourages parties to comply with the terms of their settlement agreements, lest they put themselves at risk of paying the non-breaching parties' attorney fees incurred in filing a breach of contract action."), citing *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 96APE09-1269, 1997 Ohio App. LEXIS 1241 (Mar. 31, 1997); and *Savoy Hosp., LLC v. 5839*

*Monroe St. Assocs. LLC*, 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 69 ("[A] party may receive attorney fees resulting from the other party's breach of the settlement agreement as a form of compensatory damages."), citing *Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 34 ("[A]ppellee is entitled to an award of attorney's fees as compensatory damages because those fees were incurred as a direct result of appellants' breach of the settlement agreement.").

Here, because Defendants have caused Plaintiffs to incur additional legal fees by necessitating the instant motion to enforce, Plaintiffs are "entitled to recover the reasonable attorney fees [they] incurred in enforcing the settlement agreement … as compensatory damages for [Defendants]' breach of the settlement agreement." *Rayco*, 2019-Ohio-3756, 142 N.E.3d 1267, ¶ 13 (8th Dist.).

### III. Conclusion

Defendants refusal to abide by the parties' enforceable settlement agreement continues to needlessly increase the cost of litigation for both parties. Pursuant to the clear and controlling caselaw set forth above, and the undisputable evidence of the parties' agreement attached, the Court should order Defendants to immediately comply with the parties' settlement agreement and hold an evidentiary hearing as to the amount of attorneys' fees incurred, and whether Defendants should be sanctioned under R.C. 2323.51 for their continued obstruction and any further opposition to Plaintiffs' clear entitlement to the relief requested. Should this Honorable Court not enforce the settlement Agreement, we respectfully request the Court to grant an extension on the response to the Defendants Motion for Summary judgment until the close of discovery on May 21, 2021.

Respectfully submitted,

*/s/ Daniel R. Bache*
Daniel R. Bache (0086045)

P.O. Box 5218
Fairlawn, OH 44334
P: 330.353.8529
F: 844.311.1990
dan@gethelpohio.com


*/s/ Peter Pattakos*
Peter Pattakos (0082884)
Rachel Hazelet (0097855)
THE PATTAKOS LAW FIRM LLC
101 Ghent Road
Fairlawn, Ohio 44333
Phone: 330.836.8533
Fax: 330.836.8536
peter@pattakoslaw.com
rhazelet@pattakoslaw.com

*Attorneys for Plaintiffs*


## Certificate of Service

The foregoing document was filed on February 19, 2021, using the Court's e-filing system, which will serve copies on all necessary parties.

*/s/ Daniel R. Bache*
*Attorney for Plaintiffs*